UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

BRUCE A. TAMMI,

        Plaintiff,

      v.                               Case No. 04-C-1059

PORSCHE CARS NORTH AMERICA, INC.,

        Defendant.

---

ORDER GRANTING PLAINTIFF'S MOTION TO CHANGE VERDICT
AND DIRECTING ISSUANCE OF JUDGMENT

On August 24, 2006, following the trial in this case, the jury issued its special verdict, finding that plaintiff Bruce A. Tammi's 2003 Porsche had a nonconformity covered by the manufacturer's express warranty, which substantially impaired the use, value or safety of the vehicle. Further, the jury determined that Tammi had provided defendant Porsche Cars North America, Inc., with at least four opportunities to repair a nonconformity within the first year after delivery of the vehicle and awarded $26,600.00 compensation for "any pecuniary loss" caused by the nonconformity.

A general damage's instruction was given to the jury. However, Tammi argued then that a specific "lemon law" damages instruction be given regarding "pecuniary loss" or that certain damages be awarded as a matter of law. He now renews the motion for damages as a matter of law.

Although Tammi's request is not labeled as a Rule 50 motion, the court treats it as such. As a consequence and for the following reasons, the court agrees with Tammi and concludes that the answer to the damages question must be changed as a matter of law.

Tammi brought his case invoking the court's diversity jurisdiction. Tammi's claim arises under the Wisconsin lemon law, Wis. Stat. § 218.0171. Further, both parties argue Wisconsin substantive law and no other state's law apply. Therefore, Wisconsin law applies. *Erie R.R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938).

The court must apply state substantive law as enacted by the state legislature and as interpreted or declared by the state's highest court. *See Home Valu, Inc. v. Pep Boys – Manny, Moe and Jack of Del., Inc.*, 213 F.3d 960, 963 (7th Cir. 2000); *see also Erie*, 304 U.S. at 78-79. However, if the Wisconsin Supreme Court has not spoken on the issue and the law is unclear, this court must predict how the state supreme court would decide the questions presented. *Rodman Indus., Inc. v. G & S Mill, Inc.*, 145 F.3d 940, 942 (7th Cir. 1998). In these instances, decisions of the state's intermediate appellate courts are authoritative unless there is a split among those courts or "there is a compelling reason to doubt that the courts have got the law right." *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1319 (7th Cir. 1995), *quoted in Home Valu, Inc.*, 213 F.3d at 963. Always, the question is how this court thinks the Supreme Court of Wisconsin would rule. *Home Valu, Inc.*, 213 F.3d at 963-64. However, federal courts sitting in diversity should hesitate to expand state law in the absence of any indication of intent by the state courts or legislature. *King v. Damiron Corp.*, 113 F.3d 93, 97 (7th Cir. 1997). Generally, when faced with two equally plausible interpretations of state law, the federal court should choose the interpretation which restricts liability, rather than an expansive interpretation which creates substantially more liability. *Home Valu, Inc.*, 213 F.3d at 963.

The Wisconsin lemon law, Wis. Stat. § 218.0171, is a remedial statute enacted to protect consumers of new motor vehicles. *See Garcia v. Mazda Motor of Am., Inc.*, 2004

2

WI 93, ¶¶ 1, 9, 273 Wis. 2d 612, ¶¶ 1, 9; *Church v. Chrysler Corp.*, 221 Wis. 2d 460, 466 (Ct. App. 1998).[1]  It is meant to provide an incentive for a manufacturer to put the consumer in the position the consumer thought he was in at the time he purchased or leased the vehicle. *Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 977 (1996); *Kiss v. Gen. Motors Corp.*, 2001 WI App 122, ¶ 24, 246 Wis. 2d 364, ¶ 24.

"Consumer" includes a new motor vehicle purchaser as well as a "person who leases a motor vehicle from a motor vehicle lessor under a written lease."  Wis. Stat. § 218.0171(1)(b)1, 4.  The lemon law provides that a purchaser of a new motor vehicle having a nonconformity (as defined in the statute), which has not been repaired after reasonable attempts to repair (as defined in the statute), can demand that the manufacturer

a.   Accept return of the motor vehicle and replace the motor vehicle with a comparable new motor vehicle and refund any collateral costs[, or]

b.   Accept return of the motor vehicle and refund to the consumer and to any holder of a perfected security interest in the consumer's motor vehicle, as their interest may appear, the full purchase price plus any sales tax, finance charge, amount paid by the consumer at the point of sale and collateral costs, less a reasonable allowance for use.

§ 218.0171(2)(b)2.  To receive a new vehicle or refund, a purchaser must offer to transfer title of the motor vehicle to the manufacturer.

No later than 30 days after that offer, the manufacturer shall provide the consumer with the comparable new motor vehicle or refund.  When the manufacturer provides the new motor vehicle or refund, the consumer shall return the motor vehicle having the nonconformity to the manufacturer and provide the manufacturer

---

[1]In 1999, the lemon law statute was renumbered from Wis. Stat. § 218.015 to § 218.0171.  *Kiss v. Gen. Motors Corp.*, 2001 WI App 122, ¶ 1 n.1, 246 Wis. 2d 364, ¶ 1 n.1.  The substance of the law was not changed.  *Id.*

with the certificate of title and all endorsements necessary to transfer title to the manufacturer.

§ 218.0171(2)(c).

Similarly, a lessee of a new motor vehicle having such a nonconformity that has not been repaired after reasonable attempts can demand that the manufacturer

accept return of the motor vehicle, refund to the motor vehicle lessor and to any holder of a perfected security interest in the motor vehicle, as their interests may appear, the current value of the written lease and refund to the consumer the amount the consumer paid under the written lease plus any sales tax and collateral costs, less a reasonable allowance for use.

§ 218.0171(2)(b)3.a. For a lessee to receive such a refund, the lessee

shall offer to the manufacturer of the motor vehicle having the nonconformity to return that motor vehicle to that manufacturer. No later than 30 days after that offer, the manufacturer shall provide the refund to the consumer. When the manufacturer provides the refund, the consumer shall return the motor vehicle having the nonconformity to the manufacturer.

§ 218.0171(2)(cm)1. Once the lessee receives the refund, no person may enforce the lease against the lessee. § 218.0171(2)(cm)3. For the vehicle lessor to receive its refund, the lessor must offer to transfer title to the manufacturer. Within thirty days of that offer, the manufacturer must provide the refund to the lessor, at which time the lessor must transfer title to the manufacturer. § 218.0171(2)(cm)2.

If a manufacturer does not provide the refund within the thirty-day time period after a proper demand, it violates the lemon law statute. *Varda v. Gen. Motors Corp.*, 2001 WI App 89, ¶ 40, 242 Wis. 2d 756, ¶ 40. When a manufacturer violates the lemon law statute,

[i]n addition to pursuing any other remedy, a consumer may bring an action to recover for any damages caused by a violation of this

4

section. The court shall award a consumer who prevails in such an action twice the amount of any pecuniary loss, together with costs, disbursements and reasonable attorney fees, and any equitable relief the court determines appropriate.

§ 218.0171(7).

It is under subsection (7) that Tammi sues Porsche. Thus, the question before the court is what constitutes "pecuniary loss" for a subsection (7) claim as the statute does not define "pecuniary loss." *See* § 218.0171(1).

Unlike the portions of the lemon law statute quoted above that differentiate between purchasers and lessees for the purpose of refund after the consumer provides a lemon law notice, subsection (7) does not differentiate between purchasers and lessees respecting pecuniary loss. Nor does it state what happens when the term of the car lease ends before the lawsuit authorized by subsection (7) is final or what happens to title of the car at the conclusion of a subsection (7) lawsuit.

The primary rule for interpretation of Wisconsin statutes is to discern legislative intent. *Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 979 (1996). This is derived by examining the language, scope, history, context, subject matter and purpose of the statute. *Id.* Remedial statutes are "liberally construed to suppress the mischief and advance the remedy that the statute intended to afford." *Id.*; *accord Garcia*, 2004 WI 93, ¶ 8, 273 Wis. 2d 612, ¶ 8.

For his pecuniary loss damages Tammi seeks (1) his monthly lease payments, (2) the amount he paid for the car at the end of the lease, (3) the cost of a tire rack and winter wheel package, (4) the cost of floor mats and a manual, and (5) the cost of his insurance premiums, as a matter of law. In response, Porsche contends that (1) Tammi must live with

5

the jury's award of $26,600.00, (2) if the court changes the jury award, Tammi is limited to his lease payments and cannot recover the purchase price of the car at the end of the lease, (3) any pecuniary loss damages should be offset against a reasonable allowance for Tammi's use of the car before he first reported the nonconformity, and (4) Tammi must return the car to Porsche. For discussion, Tammi's and Porsche's arguments are considered together to the extent they relate to each other.

FACTS

Tammi entered a thirty-six-month lease for a 2003 Porsche 911 Turbo Coupe on May 30, 2003. (Pl.'s Tr. Ex. 1, § 1.) *(Id.*, §§ 4, 8.H.) The lease called for payments totaling $68,884.60. *Id.*, § 4. Additionally, the lease allowed Tammi to purchase the car at the end of the lease term for $64,344.10. *Id.*, § 10.

Tammi chose to purchase the car prior to the end of the lease. At the time of purchase he had paid $57,458 under the lease ($1999.85 at the time of signing and twenty-nine monthly payments of $1912.35). (*See* Pl.'s Br. in Supp. of Mot. to Change Verdict at 1 (calculating amount paid under lease).) At the end of December 2005, he purchased the car for $75,621.88. (Trial. Ex. 53.)

A.     Lease Payments and the Jury's Award

As noted above, one purpose of the lemon law is to provide an incentive for a manufacturer to put the purchaser or lessee of a new car back into the position the purchaser was in when the vehicle was acquired. *Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 977 (1996); *Church*, 221 Wis. 2d at 468. The thirty-day window for compliance is to ensure that the manufacturer acts in a timely manner. *Id.*

6

When a manufacturer violates the lemon law by refusing to provide a refund within thirty days, at the very least, "the consumer suffers pecuniary loss in the amount of the refund he or she should have received." *Church*, 221 Wis. 2d at 470. Such a holding makes sense. The consumer should not receive *less* than what would have been due as a refund just because the manufacturer was wrongful in refusing to pay the refund and has forced the consumer to file a lawsuit. Receipt of less than the refund under subsection (2)(b)3.a flies in the face of two purposes of the lemon law: putting the consumer back in the position he was in when the car was leased and doing so in a timely manner. Therefore, the court rejects Porsche's argument that the jury's verdict of $26,600.00 must stand because Tammi took a gamble by choosing to sue under subsection (7) for pecuniary loss rather than a refund under subsection (2)(b)3.a.

Also, it follows that Tammi is entitled to double what was due pursuant to subsection (2)(b)3.a, i.e., the amount paid under the written lease plus any sales tax and collateral costs, less a reasonable allowance for use. "Collateral costs" mean "expenses incurred by a consumer in connection with the repair of a nonconformity." § 218.0171(1)(a).

The evidence is undisputed that Tammi either paid or was obligated to pay (because he purchased the car five months early) $69,327.10 in lease payments under the written lease. Notably, Porsche does not argue that Tammi is limited to the refund payable within thirty days of proper demand, i.e., an amount determined by multiplying the monthly lease payments by the number of months Tammi had paid as of the date he served his lemon law notice on Porsche. Tammi was obligated by the lease to pay U.S. Bank, as lessor, a minimum of $69,327.10, even though the vehicle was a lemon. Had Porsche paid Tammi and the lessor within thirty days as it was required, it would have paid Tammi less than $69,327.10

7

and U.S. Bank the then-current value of the lease. Tammi's lease would have terminated and the lessor could not have enforced it against him. *See* § 218.0171(2)(cm)3. But, that did not occur.

Tammi did not submit any evidence that he incurred any expenses other than perhaps mileage to reach a dealership to seek the repair of a nonconformity. Thus, he has not established any more than deminimus collateral costs to add to this amount. *See* § 218.0171(1)(a). For these reasons, Tammi is entitled to $69,327.10 as pecuniary loss, minus, perhaps, a reasonable allowance for use as set forth in subsection (2)(b)3.a. (The issue of a reasonable allowance will be discussed below.) As a result, the jury's verdict as to the amount of damages must stand.

B.    Purchase Price of the Car

Tammi also seeks to recover the purchase price of the car at the end of the lease. Porsche submits that if the court chooses to alter the jury's verdict, Tammi is entitled to no more than lease payments.

As noted above, "pecuniary loss" is not defined in the lemon law statute and lease termination is not addressed. The parties have not presented any cases directly on point. Hence, it appears that the issue before this court is one of first impression this court is unable to certify to the Supreme Court of Wisconsin. Therefore, this court must predict how the Supreme Court of Wisconsin would interpret the lemon law and decide the issue itself.

The best indicator of the Supreme Court of Wisconsin's likely ruling is *Hughes*, in which that court addressed the meaning of "pecuniary loss" for the purchaser of a lemon who sues under subsection (7). In *Hughes*, Chrysler admitted that the car was a lemon, yet failed to respond with a refund or replacement prior to expiration of the time limits under the

8

lemon law. Chrysler contended that a buyer's pecuniary loss was limited to actual out-of-pocket expenses, such as the amount the buyer paid toward the loan for the vehicle, whereas *Hughes* argued that pecuniary loss included the full purchase price of the car, regardless of how much had been paid toward the purchase price at the time of the lemon law notice. 197 Wis. 2d at 979.

The Supreme Court of Wisconsin agreed with Hughes and held that the Wisconsin legislature intended to include the full purchase price of the car as pecuniary damages. *Id.* at 977, 979, 983. The court based its conclusion on three factors. First, including the full purchase price as pecuniary loss provided consumers with a remedy substantially better than those existing prior to enactment of the lemon law. *Id.* at 983-84. Second, doubling the full purchase price as damages would provide more incentive for manufacturers to resolve disputes quickly, without litigation, "by making it far more costly to delay." *Id.* at 984. Third, the possibility of double damages creates a recovery large enough to prompt consumers to bring lawsuits, counteracting the wealth and technical expertise of the manufacturers. *Id.* at 984-85.

Importantly, the *Hughes* court overruled *Nick v. Toyota Motor Sales U.S.A., Inc.*, 160 Wis. 2d 373 (Ct. App. 1991), in which the Wisconsin Court of Appeals had found that "pecuniary loss" included only the amount of the purchase price a consumer had actually paid, whether by down payment or loan payments. *Hughes*, 197 Wis. 2d at 985-86. The *Hughes* court noted the anomalous results *Nick* produced depending on whether a consumer financed the car purchase or paid cash. For instance, a consumer paying $20,000 in cash for a vehicle would recover $40,000 as doubled pecuniary loss, whereas a consumer who financed the purchase and had only made a $2,000 down payment would receive $4,000 as

9

doubled pecuniary loss.  *Id.* at 985.[2]  The latter purchaser would be in a weaker position with respect to the manufacturer and would not have the incentive to sue.  The *Hughes* court found such a result "inconsistent with the legislative goal of encouraging manufacturers to deal promptly and fairly with all purchasers of new vehicles."  *Id.* at 986.

Including the amount of the purchase price at the end of the lease as pecuniary loss, when the lessee has purchased the car at the end of the lease, comports with the statutory language of § 218.0171 as well as the *Hughes* decision.  Subsection (2)(b)3.a sets forth the payments to be made when the manufacturer *complies* with the statute after a consumer makes a proper demand.  If the manufacturer does not provide the refund within the thirty-day time period, it violates the statute, and the consumer can sue under subsection (7).  *Hughes*, 197 Wis. 2d at 982; *see Varda*, 2001 WI App 89, ¶ 40.  The structure of the statute indicates that subsection (7)'s "pecuniary loss" is something separate from the payments set forth in subsection (2)(b)3.  Subsection (7) does not cross-reference subsection (2)(b)3, but instead uses a different term, suggesting a different measure of damages.

Importantly, the purpose of the statute is furthered by including the amount of the end-of-lease purchase price.  Allowing a manufacturer to go back to pre-violation damages, for which the consumer is paid double only the amount of the lease payments, reduces the incentive for manufacturers to comply with the law promptly and eliminate the need for litigation.  On the other hand, doubling the end-of-lease purchase price of the car as well as the lease payments encourages manufacturers to deal promptly and fairly with all

[2]The *Hughes* court observed that in this later case the secured creditor would receive the unpaid principal and any interest owed, but the amount owed the secured creditor would not be subject to doubling.  *Id.* at 985.

10

lessees of new vehicles, no matter how long or short a lease may be. In addition, the possibility of larger pecuniary loss damages gives lessees more incentive to sue.

Further, the history of § 218.0171 suggests that the end-of-lease purchase price should be included when a lessee purchases the car at the end of the lease. Initially, the lemon law covered only purchased vehicles. *See* 1983 Wis. Act 48. The Wisconsin legislature amended it later to include leased vehicles, *see* 1987 Wis. Act 105, and subsection (2)(b)3 now parallels for lessees and lessors the provisions relating to refunds to purchasers and lenders in subsection (2)(b)2.[3] Allowing a lessee who purchases the car at the end of the lease to recover the full purchase price as pecuniary loss comports with the addition of lessees to the statute. Moreover, it avoids anomalous results similar to those firmly rejected by the *Hughes* court. Also, the rule advocated by Porsche would produce anomalous results depending on whether a consumer finances a car purchase or leases the car and buys it at the end of the lease. Using the *Hughes* court's example as a guide, this court notes that a purchaser of a $20,000 car, even if financed rather than purchased with cash, would receive double pecuniary loss of $40,000 under *Hughes*. However, a lessee of a $20,000 vehicle who leases the car for a term of years and pays $10,000 in lease payments and then buys the vehicle at the end of the lease for another $10,000 would receive only $20,000 in double pecuniary loss. As in *Hughes*, such a result is inconsistent with the legislative goal of encouraging manufacturers to deal promptly and fairly with all lessees as well as purchasers of automobiles.

---

[3]Had Porsche provided Tammi with his refund within thirty days of the lemon law notice, it would have paid about the same amount whether the car had been purchased or leased; the difference would have been how the money was divided. *Compare* § 218.0171(2)(b)2.b. *with* (2)(b)3.a.-c.

Further, in the example described by the *Hughes* court, even under the overruled *Nick* case, when a purchaser of a vehicle had paid only $2,000 toward a $20,000 car, the secured creditor of the car would have to be paid the remaining principal and interest owed (even though under *Nick* that amount would not be subject to doubling). *Hughes*, 197 Wis. 2d at 185. Subsection (7) states nothing about payments to secured creditors, yet the *Hughes* court indicated that such payment should be made. Similarly, notwithstanding the lack of specificity in subsection (7) regarding payments to lessors, a manufacturer should not receive a windfall through its violation of the lemon law by owing damages only to the lessee of an unexpired lease. Like the secured creditor mentioned by the *Hughes* court, the lessor would be owed the value of the car and the amount of the unpaid lease. And if a manufacturer would be forced to pay the lessor during the term of the lease, it should not receive a windfall because the lease has ended through the purchase of the vehicle by the lessee or by the return of the car to the lessor.[4] Again, anomalous results are avoided if vehicle purchasers and lessees are treated similarly. Using the *Hughes* example as a guide again, why should Porsche pay a purchaser of a $20,000 car $40,000 in double damages, when it would pay a lessee owing $10,000 in lease payments $20,000 as double damages and the lessor either nothing or just $10,000?

Porsche admitted at oral argument that if the lease had not expired at the time the car was determined to be a lemon, it would have owed U.S. Bank the value of the lease. This court does not see why Tammi does not step into the shoes of U.S. Bank. Porsche maintains that when Tammi purchased the car he ceased to be a consumer under the lemon

---

[4]In either of these examples, the party in possession of the vehicle would be saddled with a legally tainted vehicle.

law, as the lemon law covers only purchasers of new cars. However, the cases cited by Porsche, *Varda* and *Smyser v. Western Star Trucks Corp.*, 2001 WI App 180, 247 Wis. 2d 281, are distinguishable. In those cases, the individual had ceased to be a consumer prior to making even the lemon law demand on the manufacturer. Here, Tammi was a consumer at the time he made the lemon law demand and at the time he filed this lawsuit.

Further, while Porsche's argument has an initial appeal, it flies in the face of the purposes underlying the lemon law. Litigation takes time. Porsche's position rewards the manufacturer who violates the lemon law and drags out litigation[5] until a plaintiff's lease has ended. Further, it creates no uniformity, as leases may be made for twelve, twenty-four, or thirty-six months, for instance. In *Varda*, the Wisconsin Court of Appeals indicated that if a manufacturer does not provide a required refund to a consumer within thirty days, the lemon law statute is violated and "[t]he subsequent lapse of time that occurs during resort to a dispute settlement procedure and the filing of a court action under subsec. (7) does not alter the fact that a violation of the statute occurred." 2001 WI App 89, ¶ 40, 242 Wis. 2d 756, ¶ 40 (citation omitted). Hence, the lapse of time should not act to Tammi's detriment.

Additionally, Porsche's position fails to put the lessee back into the position the lessee was in at the time the car was leased. When Tammi leased his car he had a contractual right to purchase the vehicle at the end of the lease. Porsche's position would lead to a lessee either forgoing the right to purchase the car or purchasing a lemon rather than the quality car he expected at the time the lease was signed. Further, not compensating

---

[5]The court does not suggest that Porsche dragged out the litigation here. This case was not filed until late 2004, and the court places no blame on Porsche for the length of time proceedings in this court have taken.

a lessee for the loss of the value of his option to purchase fails to return him to the position he or she was in at the time the vehicle was leased.

In *Estate of Riley v. Ford Motor Co.*, 2001 WI App 234, ¶ 10, 248 Wis. 2d 193, ¶ 10, the Wisconsin Court of Appeals held that a lessee (whose lease appears to have still been in effect) was *not* entitled to the current value of the written lease or the termination value of the lease as a pecuniary loss. But the court's reasoning appears incorrect. First and foremost, *Riley* ignores *Hughes* except as authority for under taking de novo review to resolve a question of statutory authority. *Id.* at ¶ 7. Moreover, the Wisconsin Court of Appeals does not discuss why the cases of a purchaser and lessee should not parallel each other. Second, the court says that a consumer has an *option* to demand a refund or to sue under § 218.0171(7). 2001 WI App 234, ¶¶ 11-12. This court believes that subsections (2)(b)3 and (7) are not alternatives, but sequential steps; i.e., only when the manufacturer refuses to refund the money or replace the vehicle under subsection (2) does a "violation" occur, triggering subsection (7). *Hughes* says so. 197 Wis. 2d at 982 ("The Wisconsin lemon law is violated when the manufacturer fails to voluntarily replace or repurchase the lemon vehicle within 30 days after receipt of the consumer's . . . demand. This failure to voluntarily comply with the lemon law establishes a violation of the law and triggers the § [218.0171(7)] remedies of the law."). Third, the *Riley* court says that when a consumer chooses subsection (7), he "is limited to the remedies" in that section, which does not mention the current value of the written lease. *Id.* ¶ 12. But subsection (7) is not a limitation at all – it is a double damages provision meant to persuade manufacturers to issue the refund or provide a replacement rather than litigate. *See Hughes*, 197 Wis. 2d at 984 (discussing how double damages make manufacturers carefully consider whether they will refuse to comply with the statute). The

14

*Hughes* court did not seem to consider subsection (7) to be a limitation on damages. Therefore, this court does not believe that *Riley* is an accurate predictor of how the Supreme Court of Wisconsin would decide the present issue.

Federal courts sitting in diversity generally hesitate to expand state law in the absence of any indication of intent by the state courts or legislature. But here, the Wisconsin legislature and the Wisconsin Supreme Court, the state's highest court, have emphasized the protective nature of the lemon law for consumers. *Hughes* suggests the expansion of the double damages provision in favor of consumers and places emphasis on deterring manufacturers who violate the thirty-day refund or replacement requirements of the lemon law. Further, the Wisconsin courts have indicated that the lemon law is a remedial statute and that remedial statutes are construed liberally.

For all of these reasons, the purchase price of the car at the end of the lease is included in "pecuniary loss" under § 281.0171(7).

C.    Accessories and Insurance

The Supreme Court of Wisconsin in *Hughes* held that for a purchaser of a vehicle, "pecuniary loss" includes the full purchase price of the vehicle. The court of appeals decision in that same case had indicated that pecuniary loss also includes payments of interest on the loan to finance the purchase, sales tax, and point-of-sale and collateral costs. *Hughes v. Chrysler Motors Corp.*, 188 Wis. 2d 1, 13-14 (Ct. App. 1994). Those items were not challenged in the higher court.

In *Kiss v. General Motors Corp.*, the plaintiff had purchased a tow truck, which at the time of purchase included a towing packing manufactured by a third party but installed by the dealer. 2001 WI App 122, ¶ 3, 246 Wis. 2d 364, ¶ 3. In determining what constituted

15

a comparable replacement vehicle, the Wisconsin Court of Appeals found that such a vehicle included a new towing package; the manufacturer could not transfer the old towing packing to a new tow truck, but had to replace the towing packing with a new one as well.  *Id.* ¶¶ 1, 10-17.  The court noted that had Kiss elected a refund rather than replacement, he should have received an amount including the amount paid at the point of sale.  *Id.* ¶ 16.  According to the court, "the amount paid by the consumer at the point of sale is anything paid for by the consumer that day, including non manufacturer options paid for at the time of the sale whether installed prior to sale or after."  *Id.* ¶ 16 n.5.

Under these cases, if a tire rack and winter tire and wheel package were items Tammi purchased at or near the time of delivery of the car, i.e., point-of-sale items, then they perhaps should be included in Tammi's pecuniary loss.  The same is true for floor mats and a repair manual that Tammi purchased when he acquired his car. If Tammi had purchased the car rather than leasing, the cost of these items might have been included in the purchase price rather than priced separately.

However, a review of the exhibits in this case shows that none of these items should be included as pecuniary loss in the present case.  Tammi leased the Porsche on May 30, 2003, from Zimbrick Inc. in Madison.  Trial Ex. 1.  On June 30, 2003, International Autos in Milwaukee invoiced Tammi, and Tammi paid, for the floor mats and manual.  Trial Ex. 35. On December 12, 2003, Tammi purchased the winter tires and related accessories from The Tire Rack in South Bend, Indiana.  Trial Ex. 38.  None of these items was purchased point-of-sale on the date of the vehicle lease or within a few days of acquiring the vehicle.  Although the floor mats and manual were purchased within a month, a line on what is "point-of-sale"

must be drawn somewhere, and one month falls on the wrong side of the line for Tammi. Certainly, tires purchased more than six months after the car was leased do not qualify.

Nevertheless, Tammi contends that these items were necessary only because he leased this car: but for his leasing of this particular car he would not have needed the floor mats, manual, or winter tires. However, none of these items was necessary for the car to function as intended. In particular, the winter tires must be outside the realm of "pecuniary loss." It appears that the car functioned without them for six months before purchase in Indiana, and the "but for" is really a different one: but for Tammi's living in Wisconsin or another state with snowy, winter weather, he would not have needed the winter tires.

Further, nothing indicates that Tammi would have had to turn the winter tires and tire rack over to Porsche had Porsche accepted his tender of the vehicle as a lemon. They were not nonremovable items which had to be turned over with the vehicle if Porsche had taken title to the car. They were not similar to the installed tow package in *Kiss*, which was to be returned to the manufacturer along with the tow truck.

As for insurance costs, Tammi's argument is that certain insurance was required by his lease and thus should be included as pecuniary loss like the lease payments. The court is unconvinced that insurance costs, which might have been incurred on any car Tammi drove – regardless of whether it was this particular car, whether it was leased or purchased, or whether it was a lemon – should be included as pecuniary loss. Although the lease payments and fees may be similar to the financing costs discussed by the Wisconsin Court of Appeals in its *Hughes* decision, insurance costs are different. Lenders of purchased cars could require insurance as well, yet the Wisconsin Court of Appeals did not include such costs in its discussion of pecuniary loss.

17

For these reasons, the accessories and insurance costs will not be included as pecuniary loss.

D.     Offset for Reasonable Use Allowance and Return of the Car

Neither subsection (7) nor the Supreme Court of Wisconsin's *Hughes* decision discuss whether the manufacturer, either before or after the doubling of pecuniary loss, is entitled to a reduction for use of the vehicle or to a return of the car. For several reasons, this court finds that no allowance for use and no return of the car are required in this case.

First, subsection (7) by its terms states that the court "shall" award a consumer who prevails on a manufacturer's violation of the lemon law "twice the amount of any pecuniary loss." § 218.0171(7). If the court requires that Tammi return the car, Tammi does not receive double damages; instead, he receives double damages less the value of the car – here perhaps $65,000 or $70,000 less than double damages. Similarly, if the court offsets the double-damages award by an allowance for use, Tammi again receives less than double damages. But subsection (7) mandates that the court award twice the amount of pecuniary loss.

Porsche argues that allowing Tammi to keep the car "essentially amount[s] to triple as opposed to double damages." (Def.'s Br. in Supp. of Mots. after Verdict at 15.) But that is not true, as Tammi paid over $75,000 to purchase the car – even though it was a lemon. As Tammi paid for the car, his retaining it does not constitute triple damages.

Second, neither an allowance for use nor return of the car is mentioned in subsection (7), although both are specifically noted in subsections 218.0171(2)(b)3.a and (2)(cm)1. The absence of such language in subsection (7) can be interpreted as an intentional omission. The legislature knew how to provide for such a return and allowance

18

for use, and did so in subsection (2), but chose not to provide for a return and use allowance in subsection (7). Again, the language of subsection (7) supports a holding that the car does not have to be returned and that no allowance for use should be made.

Third, the text of subsection (2) supports a holding that return of the car is only required when the manufacturer complies with the lemon law by providing a refund or replacement car. Subsection (2)(c) states, regarding purchaser consumers, that "*[w]hen the manufacturer provides the new motor vehicle or refund*, the consumer shall return the motor vehicle having the nonconformity to the manufacturer and provide the manufacturer with the certificate of title and all endorsements necessary to transfer title to the manufacturer." § 218.0171(2)(c) (emphasis added). Subsection (2)(cm)1, regarding lessee consumers, states that "*[w]hen the manufacturer provides the refund*, the consumer shall return the motor vehicle having the nonconformity to the manufacturer." § 218.0171(2)(cm)1 (emphasis added). As stated above, the legislature's use of "pecuniary loss" in subsection (7) suggests that the remedy of double pecuniary loss is different from the remedies of refund or replacement. Here, Porsche has not, to date, provided any refund, and the damages award in this case is not equivalent to one. Thus, Porsche should not get title to the car.

Fourth, Porsche should not now be able to benefit from an offer that it previously rejected. In compliance with the lemon law, Tammi offered to return the car to Porsche under § 218.0171(2). At that time, Porsche said no to the return and to the refund, which would have taken into account an allowance for use as well. Porsche said that its position declining to provide a lemon law refund was "firm and final." Trial Ex. 17. Consequently, Porsche should not now, after violating the lemon law, be able to go back and accept the car or get its equivalent, when it previously rejected Tammi's offer.

19

Fifth, denying the manufacturer the return of the car furthers the purposes of the lemon law. As recognized by the Supreme Court of Wisconsin, the double damages provision provides an incentive for manufacturers to resolve disputes quickly, without litigation, by making it far more costly to delay. *Hughes*, 197 Wis. 2d at 984. The elimination of the allowance for use and return of the car for those manufacturers who violate the lemon law by refusing to refund money to a consumer purchaser or lessee comports with that incentive. A manufacturer who complies with the lemon law receives the car and an offset for use. A manufacturer who violates the lemon law by refusing to refund the consumer's money does not get those benefits. Denial of the return of the car and an allowance for use also comports with the legislature's intent to create a recovery large enough to prompt consumers to bring lawsuits, counteracting the wealth and technical expertise of the manufacturers. *See id.* at 984-85.

The purpose of the thirty-day window for compliance by the manufacturer is to ensure that the manufacturer refunds a purchaser's or lessee's money in a timely manner. *Church*, 221 Wis. 2d at 468. In discussing the thirty-day requirement for a manufacturer to comply with the lemon law, the Wisconsin Court of Appeals has acknowledged that the rigidity of the requirement

> places the manufacturer in a difficult position with attendant risk.
> However, the Lemon Law is a policy-driven statute aimed at the
> long-standing problems resulting from the unequal playing field
> between consumers and manufacturers. If its requirements prove
> to be too rigid and its results unreasonably harsh, it is a problem
> for the legislature, not this court, to resolve.

20

*Id.* at 469-70.[6] To this court, Tammi's receipt of double damages plus his retention of the car together do not seem unreasonably harsh in light of the purposes of the statute. If they appear too harsh for Porsche, Porsche should direct its concern to the state legislature.

And sixth, the return of the car, although possible in this case, cannot always be achieved. What if Tammi had returned the car to the lessor at the end of the lease rather than buying it? The lessor is not a party to this lemon law case, so the court would have no power to order the lessor to return the car to Porsche. The legislature cannot have intended that a lessee of a lemon must buy a lemon at the end of a lease to be able to return it to the manufacturer in the event that he or she wins a lemon law case. Equating the lease situation to that of a purchaser shows the inadvisability of a rule that a car must be returned if the consumer prevails. Litigation under subsection (7) could take years. An owner of a lemon who is suing the manufacturer under subsection (7) might need to buy a different car because the lemon does not work, or because he or she needs a minivan rather than a sports car or pick-up truck. The legislature cannot have intended that the purchaser or lessee of a vehicle hold on to the lemon during the course of subsection (7) litigation rather than dispose of it by sale or return to the lessor, just so the vehicle can be returned to the manufacturer.

For all of these reasons, and the court's belief that equity favor Tammi in this case, Tammi gets to keep the Porsche and no allowance for use will be subtracted from his double damages amount. However, in light of the lemon law statute's purpose of protecting the public, *see* Wis. Stat. § 218.0171(2)(d), Tammi is ordered to fully disclose to any

---

[6]*Church*, which involved a violation of the statute and suit under subsection (7), directed the trial court on remand to resolve fact issues regarding the computation of a usage allowance. *See* 221 Wis. 2d at 471. But the parties in *Church* do not appear to have argued whether a usage allowance was required, it is unclear how the court intended the usage allowance to factor into pecuniary loss (if at all), and it is unclear what happened on remand. *See id.* at 471-72. Therefore, this court is not persuaded by *Church* that a usage allowance must be deducted from the pecuniary loss amount.

prospective future purchaser of this Porsche that a jury has found his vehicle to be a lemon under the Wisconsin lemon law.

CONCLUSION

As discussed above, the court finds that Tammi's pecuniary loss includes the amount of his lease payments and the amount of the buyout at the end of the lease but not the amounts for the accessories and insurance. Therefore,

IT IS ORDERED that the motion to change the verdict is granted. Thus, based on the record disclosing lease payments totaling $57,458.00 and a $75,621.88 purchase price for the car,

IT IS ORDERED that Tammi's pecuniary loss totals $133,079.88.

IT IS FURTHER ORDERED, pursuant to Wis. Stat. § 218.0171(7), that this pecuniary loss is doubled and that Tammi is entitled to a total award of $266,159.76, with no offset for use, and Tammi gets to keep the car.

IT IS FURTHER ORDERED that judgment be entered in Tammi's favor for $266,159.76, plus costs.

IT IS FURTHER ORDERED that Tammi inform any prospective purchaser of the 2003 Porsche 911 at issue in this case, VIN: WPAB29953S686671, that the car had a nonconformity that substantially impaired the car's use, value or safety and that the nonconformity continued after at least four repair attempts within the first year of use.

Dated at Milwaukee, Wisconsin, this 13th day of March, 2007.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE